**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES—GENERAL**

Case No. 8:25-cv-00002-JVS-KESx                     Date: March 12, 2026

Title: LORRIE HERMAN v. HILLSTONE RESTAURANT GROUP, INC.

PRESENT:

THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

| Jazmin Dorado | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PETITIONER: | ATTORNEYS PRESENT FOR RESPONDENTS: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**     **Order DENYING Plaintiff's Motion to Compel Discovery (Dkt. 90)**

## I.     INTRODUCTION

On February 24, 2026, Plaintiff Lorrie Hillstone ("Plaintiff") filed a motion, in the form of a joint stipulation, to compel further discovery from Defendant Hillstone Restaurant Group, Inc. ("Defendant") and from six subpoenaed third parties who are all Defendant's current or former employees and all represented by Cummins & White, LLP.  (Dkt. 90-1.)  Plaintiff also filed a supplemental memo.  (Dkt. 100.[1])

The Court finds that this dispute is suitable for resolution without a hearing.  The Court orders the hearing noticed for March 17, 2026, OFF CALENDAR.  For the reasons stated below, the motion is DENIED.

## II.     THE PRIVILEGE DISPUTE

Plaintiff seeks to compel Defendant to produce the first nine items listed on Defendant's amended privilege log.  The relevant pages of the privilege log are at Dkt. 90-2, pages 193-96.

---

[1] All the evidentiary objections (mostly based on speculation and argument) at Dkt. 100-2 are overruled.  Counsel has personal knowledge, and his fact-based statements are not so argumentative as to be objectionable.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00002-JVS-KESx                                        Date: March 12, 2026
                                                                                            Page 2

For ease of discussion, the Court excerpts relevant information in the chart below:

| | Type | Author | Recipient/CCs | Privilege |
|---|---|---|---|---|
| 1 | Incident Report (dated 6/17/24) HRG PRIV000178 | Sarah Renteria ("Renteria") | (1) Michelle Smith, Senior Vice President at Marsh Wortham, Hillstone's Liability Insurance Risk Manager ("Smith"); (2) Danielle Johnson, Manager, Hillstone Restaurant Group ("Johnson"); (3) Greer Illingworth [in-house counsel] | Attorney client; work product |
| 2 | Email (dated 6/17/24) HRG PRIV000289-91 | netclaims@tnwinc.com | coronadelrnar@hillstone.com | Attorney client; work product |
| 3 | Email (dated 6/17/24) HRG PRIV000292-93 | Renteria | Johnson | Attorney client; work product |
| 4 | Email (dated 6/18/24) HRG PRIV000294 | Renteria | Smith, Johnson | Attorney client |
| 5 | Email (dated 6/18/24) HRG PRIV000295-97 | Renteria | Smith, Johnson | Attorney client |
| 6 | Email (dated 6/18/24) HRG PRIV000298-99 | Renteria | Luke Kennedy, Hillstone Restaurant Manager | Attorney client |
| 7 | Email (dated 6/18/24) HRG PRIV000300 | Renteria | Smith, Johnson | Attorney client; work product |
| 8 | Email (dated 6/18/24) HRG PRIV000301-05 | Renteria | Smith, Johnson | Attorney client; work product |
| 9 | Email (dated 6/28/24) HRG PRIV000306-08 | Julia Cary, legal assistant | Illingworth; other Hillstone employees | Attorney client; work product |

## A.    A Description of the Disputed Items.

In addition to the privilege log, evidence supporting the assertion of the privileges comes from the January 12, 2026 declaration of Defendant's in-house counsel, Greer Illingworth. (Dkt.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00002-JVS-KESx                                    Date: March 12, 2026
                                                                          Page 3

68-2.)  Plaintiff argues that the Court should not accept Mr. Illingworth testimony because it is "conclusory and unsupported" or "mischaracterizes insurance reporting" or contradicted by depositions testimony of other witnesses.  (Dkt. 90-1 at 16-21.)  None of these arguments is sufficiently supported or persuasive.  The Court accepts Mr. Illingworth testimony describing the nature of the Items 1-9 and corporate policies underlying the creation of incident reports generally.  Mr. Illingworth declares that it is "corporate policy" to have managers collect information and prepare incident reports "for the dual purpose of both putting our insurance claim manager on notice as well as to share information with me in order to assist with any legal investigations, to respond to any demand letters in the future, and/or in connection with defending lawsuits that are frequently filed whenever there is any incident at the restaurant regardless of whether the claim has merit."  (Dkt. 68-2, ¶ 15.)  Ms. Renteria sent Item 1 to the Marsh & McLennon Agency and to Bandera's general manager, Danielle Johnson, who then later sent a copy to Mr. Illingworth.  (Id.)

        Plaintiff argues that Mr. Illingworth cannot contradict Defendant's Rule 30(b)(6) deponent on topics of incident reporting, Jana Lee.  (Dkt. 90-1 at 21-22.)  But Plaintiff failed to identify how Mr. Illingworth's declaration and Ms. Lee's testimony about Items 1-9 are contradictory.  Plaintiff included excerpts from Ms. Lee's deposition as an exhibit.  (Ex. 36: Dkt. 90-2 at 265.)  None of this testimony is marked or highlighted.  The pages of testimony cited in Plaintiff's meet and confer letter on this topic (Dkt. 90-2 at 189, citing Lee deposition pages 309, 330-32) are not in Exhibit 36.

        **1.      Item 1**

        The privilege log describes Item 1 as a "confidential incident report prepared in anticipation of litigation to be provided to legal counsel."  (Dkt. 90-2 at 193.)  Mr. Illingworth describes Item 1 as follows:

> HRG_PRIV000178 is a confidential incident report prepared by Defendant's manager on duty Sarah Renteria.  Ms. Renteria testified in deposition that she prepared the incident report to be shared with me in anticipation of litigation. That is consistent with our corporate policy.  We treat these incident reports as in anticipation of litigation.  We rely on our managers to collect information for the dual purpose of both putting our insurance claim manager on notice as well as to share information with me in order to assist with any legal investigations, to respond to any demand letters in the future, and/or in connection with defending lawsuits that are frequently filed whenever there is any incident at the restaurant regardless of whether the claim has merit.

(Dkt. 68-2, ¶ 15.)

        Defendant "previously produced a blank copy of the incident report at issue, at HRG008953, which is in Plaintiff's possession.  A true and correct copy is attached hereto as

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00002-JVS-KESx                                   Date: March 12, 2026
                                                                  Page 4

Exhibit 19." (Dkt. 90-3, ¶ 18.)  The form (Dkt. 90-3 at 306) is titled "GENERAL LIABILITY
NOTICE OF OCCURRENCE/CLAIM."  (Id.)  It is pre-printed to be sent to Marsh McLennan
Agency and references a Travelers policy number.  (Id.)  It asks for policy information, "type of
liability," and information about the "injured/property damage."  (Id.)

### 2.      Items 2, 4, 5, 7, and 8

The privilege log describes Item 2 as a "confidential insurance claims communication in
anticipation of litigation."  (Dkt. 90-2 at 193.)  It describes Items 4, 5, 7, and 8 a "confidential
attorney-client communication[s] in connection with seeking, providing, and/or seeking legal
advice regarding anticipated litigation."  (Dkt. 90-2 at 194-95.)

Mr. Illingworth describes all these items as follows: "HRG_PRIV000289-291, 294, and
295-297, 300, and 301-305 are confidential emails between Ms. Renteria and our insurance
claims reporting representatives and Marsh for the distinct purpose of claims reporting and
securing legal advice and/or in anticipation of litigation/claims arising from the Incident."  (Dkt.
68-2 ¶ 16.)

### 3.      Items 3 and 6

The privilege log describes Item 3 is as a "Confidential communication in anticipation of
litigation to be provided to legal counsel."  (Dkt. 90-2 at 194.)  It describes Item 6 as a
"confidential attorney-client communication in connection with seeking, providing, and/or
seeking legal advice regarding anticipated litigation."

Mr. Illingworth describes Items 3 and 6 as "confidential emails between Ms. Renteria and
managers Danielle Johnson and Luke Kennedy sharing the information from the Incident report
so that it may be shared with me and so that these managers are aware of the potential claim and
anticipated litigation in order to coordinate with my office."  (Dkt. 68-2 ¶ 17.)

### 4.      Item 9

The privilege log describes Item 9 is as a "confidential attorney-client communication in
connection with seeking, providing, and/or seeking legal advice regarding anticipated litigation."
(Dkt. 90-2 at 196.)  Mr. Illingworth describes Item 9 as "a confidential internal email from legal
assistant Julia Cary summarizing and discussing the potential, anticipated litigation from
multiple different potential claims, including the Incident at issue, to myself and employees who
assist with risk and claims assessment within Defendant's operations in connection with a
weekly discussion regarding litigation threats to our company."  (Dkt. 68-2 ¶ 18.)  Mr.
Illingworth further explains Ms. Cary's role as follows:

> Julia Cary performs multiple roles at Hillstone, just like many other employees.
> One of her roles is a legal assistant. One of Ms. Carey's tasks is to review,
> summarize, and provide myself and management with potential legal claims on a

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00002-JVS-KESx                                        Date: March 12, 2026
                                                                               Page 5

regular basis. Ms. Carey did this in connection with the incident at issue, which is why her email communications regarding the incident to myself and management are listed on our privilege log.

(Id. ¶ 19.)

### B.         The Attorney-Client Communication Privilege.

The parties agree that the privilege applies to a "confidential communication between client and lawyer," which means "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." Cal. Ev. Code §§ 952, 954.

The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship. Costco Wholesale Corp. v. Superior Court, 47 Cal. 4th 725, 733 (2009). Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply. Id. If the "attorney-client privilege attaches to a confidential communication between the attorney and the client [it] bars discovery of the communication irrespective of whether it includes unprivileged material." Id. at 734.

### 1.         Waiver.

None of Plaintiff's waiver arguments prevail. Plaintiff contends that disclosing Items 1-9 to "non-legal recipients" waived the privilege. (Dkt. 90-1 at 35.) Plaintiff cites no law for the premise that a corporation waives the privilege for including non-lawyer employees in communications with its lawyer, particularly if those employees are managers or witnesses providing information to the lawyer.

Plaintiff contends that Defendant waived the privilege by keeping the incident report and related communications in a binder accessible to Bandera staff. (Dkt. 90-1 at 16.) But again, Plaintiff cites no law that disclosure to a corporation's own employees waives the privilege.

Plaintiff contends that Defendant waived the privilege by disclosure to third parties, specifically to Defendant's insurer and the insurer's claims administrator. (Dkt. 90-1 at 13.) Defendant persuasively counters that "[according] to the weight of authority, a report or other communication made by an insured to his liability insurance company, concerning an event

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00002-JVS-KESx                                    Date: March 12, 2026
                                                                          Page 6

which may be made the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him." (Id. at 47, citing Gene Compton's Corp. v. Superior Court of S.F., 205 Cal. App. 2d 365, 379 (1962) and Travelers Ins. Cos. v. Superior Court, 143 Cal. App. 3d 436, 452 (1983).)

Plaintiff points out that Defendant has produced incident reports in other cases without claiming a privilege. (Dkt. 90-1 at 23-24.) But production of an incident report in one case does not waive the attorney-client communication privilege as to a different incident report in a different case.

### 2.    Involvement of Legal Personnel.

Plaintiff challenges the application of the privilege where no lawyer is listed in the log as a sender or recipient. (Dkt. 90-1 at 28-31.) But as to Items 1, 7, 8, and 9, Mr. Illingworth is listed as a sender or recipient.

As to Item 2, the insurer (or insurer's claims administrator) is involved, and Defendant can claim the privilege over a "confidential insurance claim communication in anticipation of litigation." (Dkt. 90-2 at 193.) Items 4, 5, 7 and 8 all involve Michelle Smith of Marsh, Defendant's liability insurance risk manager, so the same rationale applies. (Dkt. 68-2 ¶ 16.)

Mr. Illingworth describes Items 3 and 6 as "confidential emails between Ms. Renteria and managers Danielle Johnson and Luke Kennedy sharing the information from the Incident Report so that it may be shared with me and so that these managers are aware of the potential claim and anticipated litigation in order to coordinate with my office." (Dkt. 68-2 ¶ 17.) There is nothing unusual about one point of contact within a company gathering information from other employees to transmit to the company's lawyers. The fact that these communications did not directly "cc" the lawyer does not place them outside the privilege covering confidential attorney-client communications.

Plaintiff argues that "Illingworth did not retain outside counsel at Cummins & White, LLP until after receiving Plaintiff's August 7, 2024 preservation letter." (Dkt. 90-1 at 20.) But the attorney-client communication privilege can attach to communications between a corporate client and in-house counsel.

### 3.    Privilege Log Accuracy.

Plaintiff argues that the privilege log is a lie; Defendant's employees could not have been seeking legal advice immediately after the incident "because if that is indeed true, Plaintiff's prior request for spoliation is supported, despite the Magistrate [Judge]'s denial." (Dkt. 90-1 at 26.) This argument misstates the basis of the Magistrate Judge's prior ruling. That ruling did

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00002-JVS-KESx                                    Date: March 12, 2026
                                                                          Page 7

not turn on *when* litigation was anticipated (and thus when a duty to preserve relevant evidence arose).  Rather, it turned on *what* constituted evidence reasonably anticipated to be relevant. That ruling concluded that footage from security cameras from food preparation areas that were too far away to capture details (like whether a salad was prepared with walnuts) was not footage that was reasonably anticipated to be relevant.  Given the seriousness of the medical emergency in this case, it is reasonable that Bandera's management anticipated litigation.

Plaintiff raises several variations of this "don't believe the privilege log" argument. Plaintiff notes that when Danielle Johnson was asked "why incident reports are created," she answered, "I don't know."  (Dkt. 90-1 at 13, citing Dkt. 90-2 at 287.)  The fact that Ms. Johnson (who did not write the incident report at issue) was unaware of Mr. Illingworth's purpose in requiring such communications does not diminish the truthfulness of his testimony.

Plaintiff argues that communications with Mr. Illingworth immediately after the incident could not have been for the purpose of obtaining legal advice in anticipation of litigation because he "was not in the position of Vice President and General Counsel as of June 17, 2024."  (Dkt. 90-1 at 18.)  But he was still a lawyer working in-house for Defendant.

### 4.      Dominant Purpose.

The "attorney-client privilege does not attach to an attorney's communications when the client's dominant purpose in retaining the attorney was something other than to provide the client with a legal opinion or legal advice."  <u>Costco</u>, 47 Cal. 4th at 735.  For example, the privilege is not applicable when the attorney acts merely as a negotiator for the client or is providing business advice.  <u>Id.</u>

Plaintiff argues that the dominant purpose for Items 1-9 was not to obtain legal advice but rather some business purpose, such as improving safety or customer service.  In support, Plaintiff cites an employee handbook which directs restaurant employees to report guest accidents to the manager because "This is not only good service, but important for safety reasons."  (Dkt. 90-1 at 22-23.)  The employee handbook does not tell employees that information they report to managers about accidents may be passed on to lawyers to obtain legal advice.  (<u>Id.</u> at 23.)  But this omission from the handbook has no tendency to show that the dominant purpose of Item 1 and the related communications at Items 2-9 was something other than as described in the privilege log.

Plaintiff argues that by describing the incident report process as collecting information both for lawyers and insurers, Mr. Illinworth conceded that there was a dual purpose, and the dominant purpose was "an operational claims-handling function," not seeking legal advice. (Dkt. 90-1 at 19.)  This argument attempts to raise a distinction without a difference since lawyers and insurers work together to assist clients anticipating litigation.

Plaintiff also contends that if reporting accidents to counsel via incident reports is a

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00002-JVS-KESx                                                Date: March 12, 2026
                                                                                              Page 8

"standardized business protocol," then that makes the dominant purpose of the communication a business purpose. (Id. at 23.)  Plaintiff notes that Mr. Illingworth did not give specific instructions about what information employees should gather and transmit about this incident after it occurred but instead relied on them to fill out the standard form (identifying the "type of liability") following a pre-established policy.  Of course, it is a sensible corporate policy to collect and transmit information to your lawyer and insurer if a customer has a medical emergency in your business.  Plaintiff's "corporate policy" arguments do not defeat the application of the privilege.

Plaintiff relies on Fisher v. Kohl's Dep't Stores, Inc., No. 2:11-cv-3396 JAM GGH, 2012 U.S. Dist. LEXIS 86989 (E.D. Cal. June 22, 2012).  In that case, elderly plaintiff Nina Fisher slipped and fell on a discarded hanger in a Kohl's Department Store, breaking several bones.  Plaintiff suffered from dementia, so she was unable to recall what happened before the fall or if she spoke with any Kohl's employees afterwards.  Mary Ann Haughner, an assistant store manager who authored an incident report about the fall, testified at her deposition that she did not recall the incident, speaking with plaintiff, or assisting plaintiff at the time of the incident. Id. at *2.

In response to discovery, Kohl's identified two incident reports on its privilege log: (1) the incident report about Plaintiff's fall prepared by Ms. Haughner; and (2) an incident report about a previous accident prepared by Store Manager Valerie Donnelly.  The privilege log, however, merely indicated that the recipient of both reports was "Kohl's Department Stores, Inc."  Id. at *9.  Ms. Haughner testified that whenever a customer was injured, the store manager needed to complete an accident report and send it to the "Kohl's accident hotline" whose personnel would forward the information as appropriate.  Id.  Kohl's had corporate policy documents that stated, "Incident Investigation has one primary goal - to prevent recurrence."  Id. at *10.

On these facts, the district court found that Kohl's "failed to make a sufficient showing of the preliminary facts necessary to application of the attorney-client privilege."  Id. at *11. "According to defendant's own policies, the dominant purpose of these statements, independently prepared by store employees, is to prevent recurrence and make the workplace safer - not to communicate information to or seek advice from defendant's attorneys."  Id. at *12. "Also, the evidence as to where the incident reports are routinely sent is at best ambiguous."  Id.

The Fisher v. Kohl's decision distinguished Payless Drug Stores, Inc. v. Superior Court, 54 Cal. App. 3d 988 (1976).  In Payless, "accident reports prepared by defendant's employees on pre-printed forms supplied, and required to be completed by, the employer's insurance company" were found to be privileged attorney-client communications.  Kohl's at *13-14.  In that case, the defendant "supplied evidence that both the insurance carrier and the defendant intended the reports to be confidential for transmission to and use by attorneys provided by the insurance company to defend the defendant in litigation arising out of the accidents."  Id. at *14.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00002-JVS-KESx                                    Date: March 12, 2026
                                                                                    Page 9

The present case is more like <u>Payless</u> than <u>Fisher v. Kohl's</u>.  Here, Defendant has provided a more robust privilege log and evidence that the incident report and related communications on the privilege log were prepared for the purpose of communicating information to counsel and the insurer.  (Dkt. 68-2, ¶¶ 15-19.)  Like in <u>Payless</u>, blank pre-printed forms were provided to managers for the purpose of providing relevant information.  (Dkt. 90-1 at 15.)  <u>See also</u> <u>Scripps Health v. Superior Court</u>, 109 Cal. App. 4th 529 (2003) (holding that hospital's "occurrence reports" were not prepared for the dominant purpose of accident prevention but rather privileged attorney-client communication where employees used pre-printed report forms, employees recorded facts they observed, the hospital required completion of the reports, and the reports were reviewed by in-house counsel and risk managers who were the functional equivalent of insurers); <u>Palafox v. Target Corp.</u>, No. 2:23-cv-03884-SVW-JPR, 2023 U.S. Dist. LEXIS 214501, at *6 (C.D. Cal. Dec. 1, 2023) (holding that Target incident reports were privileged attorney-client communications where they were required to be completed by a store manager and evidence showed that the reports were sent "to the third party that handles its day-to-day legal defense").

Of course, "a client may be examined on deposition or at trial as to the facts of the case, whether or not he has communicated them to his attorney.  While the privilege fully covers communications as such, it does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney."  <u>Costco</u>, 47 Cal. 4th at 735. Consistent with this, and unlike the parties in <u>Fisher v. Kohl's</u>, Plaintiff has had the opportunity to question Ms. Renteria (the author of nearly all the privileged communications in dispute) at her deposition concerning the facts she knows about the incident.

### C.   <u>The Attorney Work Product Privilege.</u>

Because the attorney-client communication privilege protects Items 1-9 against disclosure, the Court need not address the applicability of the attorney work product privilege.

## III.   THE SUBPOENA DISPUTE

Plaintiff seeks to compel amended written responses and additional document production in response to subpoenas served on the following six persons:

|   | Name | Role | Deposition | Subpoena(s) & Documents Sought[2] |
|---|------|------|-----------|----------------------------------|
| 1 | Amanda Brauer | Graphic designer who worked on menu design<br><br>(Dkt. 90-2 at 207) | 1/13/26<br><br>(Dkt. 90-2, ¶ 66.) | Dkt. 90-2 at 132;<br><br>Dkt. 90-2 at 146<br><br>20 RFPs: Documents about removing walnuts from the menu's ingredient list |

---

[2] This chart summarizes the topics of the "documents sought."  Not every RFP is listed.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00002-JVS-KESx

Date: March 12, 2026

Page 10

| | | | | |
|---|---|---|---|---|
| | | | | for the Nice Little House Salad at Bandera and other restaurants; versions and drafts of the menu, policies governing menu drafting and changes, communications about ingredients for the Nice Little House Salad, food allergen training, communications about the incident |
| 2 | Tino Ciambriello | Senior Vice President <br><br> (Dkt. 90-1 at 44) | Available but not deposed (Dkt. 90-3, ¶ 14) | Dkt. 90-2 at 70 <br><br> 22 RFPs: Communications about the incident with other Bandera personnel, communications about the lawsuit, documents about removing walnuts from the menu's ingredient list for the Nice Little House Salad at Bandera and other restaurants, communications about disclosing nut allergens, food safety training certifications |
| 3 | Jana Lee | Vice President and Defendant's Rule 30(b)(6) designee for some topics (Dkt. 90-1 at 21) | 9/22/25 <br><br> (Dkt. 90-2, ¶ 64.) | Dkt. 90-2 at 85 <br><br> 22 RFPs: similar to Ciambriello subpoena |
| 4 | Sarah Renteria | A manager on duty the night of the incident <br><br> (Dkt. 90-1 at 44) | 7/7/25 <br><br> (Dkt. 90-2, ¶ 63.) | Dkt. 90-2 at 100 <br><br> 30 RFPs: Communications about the incident, documents about removing walnuts from the menu's ingredient list for the Nice Little House Salad at Bandera, communications about food allergens, food safety training certifications |
| 5 | Anthony Felice | Culinary manager on duty the night of the incident | 10/2/25 (Dkt. 90-3 at 296) | Dkt. 90-2 at 116 <br><br> 30 RFPs: Similar to Renteria subpoena |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00002-JVS-KESx                              Date: March 12, 2026
                                                             Page 11

|   |   |   | (Dkt. 90-1 at 44) |   |   |
|---|---|---|---|---|---|
| 6 | Danielle Johnson | General Manager involved in later investigations  (Dkt. 90-1 at 44) | 11/19/25  (Dkt. 90-2, ¶ 65.) | Dkt. 90-2 at 29  12 RFPs: communications about disclosing tree nut ingredients on the Bandera menu, communications about disclaimer language for the Bandera menu, communications about the Nice Little House Salad, communications about the incident |

Counsel for Defendant, Mr. Fahy, describes the process of responding to these subpoenas, as follows:

3. On October 20, 2025, Hillstone timely served objections to a deposition subpoena for documents and testimony served on **Danielle Johnson**, a true and correct copy of which is attached hereto as Exhibit 1.

4. On November 24, 2025, Plaintiff served document subpoenas on several current and former employees of Hillstone: **Tino Ciambriello, Jana Lee, Sarah Renteria, Anthony Felice, and Amanda Brauer**.

5. On December 5, 2025, Hillstone served objections to the subpoenas. Due to inadvertence, the objections were served on behalf of Hillstone, instead of the responding non-parties. True and correct copies of those objections are attached hereto as Exhibits 2 through 6.

6. In response, counsel for Hillstone, including myself and Eric Khodadian, met and conferred with Plaintiff's counsel (Blaine Brown) and informed him on December 29, 2025, that Hillstone would be producing responses by the non-parties and any responsive documents. …

7. Attached hereto as Exhibits 7 through 11 are true and correct copies of the [12/29/25] responses and objections by non-parties, **Tino Ciambriello** (February 5, 2026), **Danielle Johnson** (January 28, 2026), **Jana Lee** (February 6, 2026), **Sarah Renteria** (February 5, 2026) and **Anthony Felice** (January 23, 2026) to Plaintiff's November 2025 document subpoenas.

9. On December 2, 2025, my office served objections to Plaintiff's notice of deposition of Hillstone employee **Amanda Brauer**, which notice contained document requests. A true and correct copy of those objections are attached

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00002-JVS-KESx                                  Date: March 12, 2026
                                                                 Page 12

hereto as Exhibit 12.  As it relates to Ms. Brauer, Plaintiff sought the same documents from Ms. Brauer twice, once in connection with her deposition, and again in a subpoena.  But she provided all responsive documents in her possession.  On January 12, 2026, my office served responses and objections on behalf of Ms. Brauer, in which she specifically responded to each document request contained within the deposition subpoena.  A true and correct copy of this response is attached hereto as Exhibit 12.1.

(Dkt. 90-3, ¶¶ 3-7, 9.)

The written responses state as follows:

|   | Name | Response |
|---|------|----------|
| 1 | Amanda Brauer | Dkt. 90-3 at 220: Objections to Deposition Subpoena and RFPs: objections only<br><br>Dkt. 90-3 at 235: Amended Response and Objections:<br><br>After objecting, each response states, "After a reasonable and diligent inquiry and search, Responding Party is unable to comply as no responsive records are within Responding Party's possession, custody, and/or control." |
| 2 | Tino Ciambriello | Dkt. 90-3 at 110:<br><br>After objections, the responses state either that Responding Party (1) has made a reasonable and diligent inquiry but has no responsive records are within their possession, custody, and/or control; or (2) only has the same responsive documents already produced by Hillstone, identifying them.  The responses also state that Responding Party "is not withholding responsive materials based on these objections." |
| 3 | Jana Lee | Dkt. 90-3 at 146<br><br>Same as Ciambriello, except RFP 3: "Responding Party states that after a diligent and reasonable search and inquiry of the documents and information available to her, she is producing all responsive documents in her possession, custody or control, specifically text messages with Sarah Renteria on June 19, 2024, regarding the incident." |
| 4 | Sarah Renteria | Dkt. 90-3 at 169<br><br>Same as Ciambriello, except RFPs 1, 2 and 4, in which Responding party agrees to produce text messages with Jana Lee, Danielle Johnson, and Anthony Felice. |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00002-JVS-KESx                              Date: March 12, 2026
                                                                                        Page 13

| 5 | Anthony Felice | Dkt. 90-3 at 193<br><br>Same as Ciambriello, except RFPs 2 and 4 in which Responding party agrees to produce text messages with Danielle Johnson and Sarah Renteria |
|---|---|---|
| 6 | Danielle Johnson | Dkt. 90-3 at 133<br><br>Same as Ciambriello. |

### A.      <u>Waiver of Objections.</u>

Plaintiff contends that Danielle Johnson waived all objections, including privilege, because "Defendant's counsel served written objections solely on behalf of Defendant—not on behalf of" Ms. Johnson. (Dkt. 90-1 at 55.)  When Plaintiff's counsel pointed this out in October 2025, no new objections were served. (<u>Id.</u>)  But Ms. Johnson did serve a response, including objections, on January 28, 2026. (Dkt. 90-3 at 133.)

As to the other five subpoenaed persons, Plaintiff contends that they waived all objections, including privilege, because "Defendant served objections purportedly on behalf of the non-parties without asserting any personal right or privilege in the materials sought and without filing a motion to quash or a motion for a protective order." (Dkt. 90-1 at 62.)  Plaintiff argues that while Cummins & White later filed objections in the name of the individuals (i.e., the responses identified in the chart above), these objections were filed after the 14-day period for written objections allowed by Rule 45(d)(2)(B). (<u>Id.</u> at 63.)

As stated above in the excerpts from defense counsel's declaration, Defendant argues that its objections were timely and making the objections in the name of Defendant rather than the responding witnesses was mere inadvertence that was promptly corrected.

Failure to timely object to discovery generally results in the waiver of any objections. But courts retain discretion to excuse a late-responding party from waiver for good cause.  Fed. R. Civ. P. 33(b)(4) (rule for interrogatories served on parties).  Courts have at least as much discretion to excuse late objections served by non-parties responding to subpoenas.

> Courts retain a fair amount of discretion when determining whether good cause exists for excusing a late objection.  Indeed, a court may excuse untimely objections when the delay is not substantial.  In addition to the length of delay, courts also consider the reason for the delay, the presence of bad faith, prejudice to the party requesting the discovery, and the harshness of imposing a waiver.

<u>Doe v. Swift Transp. Co.</u>, No. 2:10-cv-00899 JW, 2015 U.S. Dist. LEXIS 154019, at *6 (D. Ariz. Nov. 13, 2015) (citations in footnotes omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00002-JVS-KESx                                        Date: March 12, 2026
                                                                            Page 14

The Court declines to exercise its discretion to impose waiver.  Here, the delay between asserting objections in Defendant's name versus the responding witnesses' names was not long, Plaintiff has not identified any significant change between the objections asserted initially and those asserted later, this is the kind of document formatting mistake that could easily have been done inadvertently, the witnesses ultimately produced documents and stated that they are not withholding documents on the basis of their objections, and Plaintiff had a chance to depose the subpoenaed witnesses.

> **B.      The Objections' Merits.**

Plaintiff's portion of the Joint Stipulation challenges at length the merits of the objections.  (Dkt. 90-3 at 66-174.)  Defendant argues that this dispute is pointless because (1) the witnesses already served amended responses; (2) "Documents were produced where responsive materials exist, including Bates Nos. DJohnson_000001 through DJohnson_000003 and HRG 008954–008967"; (3) "Where no additional responsive documents exist, that fact was expressly stated after a reasonable and diligent search"; and (4) the responses say that no responsive materials are being withheld due to objections.  (Id. at 175.)

Plaintiff's challenges do not support an order compelling further written responses or document production.  The Court addresses Plaintiff's challenges below, focusing on Mr. Ciambriello because most of the subpoena responses track his responses.

> **1.      Ambiguity of Responses.**

As to Mr. Ciambriello, Plaintiff argues:

[E]ach response states: "Non-Party is not withholding responsive materials based on these objections," and then provides a substantive response "subject to the foregoing objections." That construction is ambiguous because it suggests the production (if any) is limited by the objections, while simultaneously asserting nothing is being withheld.

(Dkt. 90-1 at 69.)  But the amended responses are sufficiently clear.  They say, "Non-Party is not withholding responsive materials based on these objections."  (See, e.g., Dkt. 90-3 at 111.)  Other responses say, "Subject to the foregoing [objections], under which no response documents are being withheld, Non-Party states …."  (Id. at 194.)

> **2.      Searches by Responding Witnesses.**

As to Mr. Ciambriello, Plaintiff argues:

A Rule 45 subpoena imposes an independent obligation on the subpoenaed non-party to conduct a reasonable search of documents within his possession, custody, or control and to produce responsive documents.  Mr. Ciambriello cannot satisfy

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00002-JVS-KESx                          Date: March 12, 2026
                                                                        Page 15

that obligation by referencing Hillstone's production— particularly without identifying what he searched, what sources were reviewed (e.g., email, text messages, messaging platforms, personal devices), and whether he possesses additional responsive documents not in Hillstone's production.

(Dkt. 90-1 at 70.)

But Mr. Ciambriello's responses generally say: "After a reasonable and diligent inquiry and search of the documents and information available to Responding Party, Responding Party is unable to comply as no responsive records are within Responding Party's possession, custody, and/or control." (See, e.g., Dkt. 90-3 at 111-12.) This response indicates that Mr. Ciambriello searched through materials in his own possession, custody, or control. There is no requirement that a non-party responding to a subpoena include in their written responses a description of how they conducted their reasonable search for responsive documents. Nor is there any requirement that subpoenaed witnesses provide a "sworn, request-by-request declaration describing the scope of the search conducted, including the custodians searched, sources/locations examined, date ranges, the date the search began, and the ESI methods/terms used," as Plaintiff seeks to compel. (Dkt. 90-1 at 78.)

### 3.      Inconsistent Terminology.

Plaintiff argues that some responses say that the witness has no responsive "documents" while others say the witnesses has no responsive "materials." (Dkt. 901- at 70.) According to Plaintiff, this is a "deliberate standardized ambiguity" and "gamesmanship," leaving open the possibility that some witnesses are withholding "documents" while others are withholding "materials." (Id. at 70-71.) The variation in terminology is not reasonably susceptible to the interpretation urged by Plaintiff.

### 4.      Low Production Volume.

Plaintiff argues that the production of documents in response to these subpoenas was "so minimal it should be treated as a non-production." (Dkt. 90-1 at 59.) But it is not surprising that current and former employees, all represented by the same counsel as Defendant, would have already given responsive records to counsel.

### 5.      Other Objections.

Plaintiff argues that the witnesses should not have objected on grounds like privacy, disproportionality, or over breadth if they did not intend to withhold documents based on such objections, and they should be required to amend their written responses to remove such "boilerplate" objections. (Dkt. 90-1 at 69.) But this would be useless work since the witnesses' responses already confirm that they are not withholding documents based on these objections.

To the extent there are other challenges to objections or to the wording of the responses

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00002-JVS-KESx                                     Date: March 12, 2026
                                                                                      Page 16

in Plaintiff's briefing not addressed in this Order, the Court finds that they are waived.  Plaintiff chose to challenge every objection, present repetitive briefing, seek extreme remedies not supported by the discovery rules, raise arguments or commentary irrelevant to the instant motion (like spoliation claims to be addressed "at a later date," see Dkt. 90-1 at 63, and complaints about other, recent discovery responses, see id. at 180), and unreasonably interpret the responses received.

For all these reasons, Plaintiff's motion to compel further written responses and document production in response to the subpoenas is DENIED.

## IV.    SANCTIONS

Plaintiff's counsel asks for contempt sanctions against the subpoenaed employees.  (Dkt. 90-1 at 6, ¶ 5.)  Plaintiff's counsel also asks for approximately $30,000 in monetary sanctions, as follows:

> Defendant's discovery conduct has required Plaintiff to incur substantial attorney time. Plaintiff has expended 57.7 hours at $450/hour ($25,965) reviewing subpoena productions, engaging in meet-and-confer efforts, cross-referencing altered subpoena response language, and drafting Plaintiff's portion of this Joint Stipulation. (Brown Decl. ¶ 72.)  Plaintiff anticipates an additional approximately 10 hours for the accompanying declaration and citations to evidence, bringing the total to approximately 62.7 hours ($30,465).

(Dkt. 90-1 at 179.)

Defendant asks that Plaintiff's counsel "be sanctioned, again, under Rule 37(b)(2) and Local Rule 37-4, this time in the amount of $9,560, because this motion was not brought in good faith …."  (Dkt. 90-1 at 43.)  Defendant argues that Plaintiff "bizarrely, failed to include the written responses by the non-parties" in the exhibits.  (Id. at 11.)  Defendant also argues, "Prior to receiving Plaintiff's joint stipulation, Plaintiff's counsel never specifically raised any issues with the substantive responses by the nonparties."  (Id.)  Defendant also argues that Plaintiff did not raise any reference to deficiencies in Mr. Illingworth's declaration or the Kohl's case during the meet and confer process.  (Id. at 42.)

Plaintiff's counsel contends that he initiated the meet and confer process about the subpoena dispute and the privilege log dispute by sending a letter on February 5.  (Ex. 20: Dkt. 90-2 at 184.)  That letter challenges at length the objections asserted in response to the subpoenas.  (Id.)  It does not, for example, take issue with some witnesses referring to producing all "materials" while others refer to producing all "documents."  The Court, however, declines to rely on the alleged failure to meet and confer since this case has already passed the fact discovery cutoff date and there should be few new discovery disputes.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00002-JVS-KESx                              Date: March 12, 2026
                                                                        Page 17

Ultimately, the Court is instructed to impose fee-shifting sanctions when a party loses a discovery motion unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

Regarding the privilege log dispute, issues of privilege are often thorny. As discussed above, there are cases addressing privileged claims over "incident reports" going both ways. While Plaintiff's portion of the joint stipulation raised too many arguments (often making it difficult to find the best arguments), Plaintiff's challenge to Defendant's privilege log Items 1-9 was not meritless.

Regarding the subpoena dispute, while the written responses did contain boilerplate objections, this was mitigated by unambiguous supplemental responses confirming that the witnesses were not relying on the objections to withhold responsive documents. The Court sees no aspect of this dispute that was "substantially justified." The Court, therefore, awards fee-shifting sanctions to Defendant under Rule 37(a)(5)(B) for the portion of the fees attributable to the subpoena dispute. The substantive pages of the Joint Stipulation range from pages 12-174 (163 pages). Of that, pages 54-174 (121 pages) address the subpoena dispute, which is about 74%. The Court has reviewed Mr. Fahy's Declaration (Dkt. 90-3, ¶ 19) and finds the amount of time spent and hourly rates reasonable based on the length of the joint stipulation and the meet and confer correspondence and the nature of the disputes raised. Court, therefore, awards 74% of $9,560, which is approximately (rounded down) $7,000, as fee-shifting sanctions. These sanctions are issued against the OC Trial Group, APC, to be paid within thirty (30) days.

                                                        Initials of Deputy Clerk <u>jd</u>